# EXHIBIT A

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *ex rel.* ALISHA KNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **RELATOR'S DISCLOSURE OF** |
| | ) | **ORIGNIAL SOURCE INFORMATION** |
| RELIANT HOSPICE, INC, | ) | |
| RELIANT MEDICAL | ) | |
| PRODUCTS, INC, CONSOLO | ) | |
| SERVICES GROUP, LLC, | ) | |
| | ) | |
| Defendants. | | |

## ORIGINAL SOURCE INFORMATION

1.      The Relator was originally hired by Reliant in September 2006 as an Office Manager.

2.      At that time, the Relator's job duties included overseeing payroll preparation, handling Reliant's human resource needs, ordering supplies, interviewing new employees, hiring office staff, handling employee discipline issues, and overseeing employee files.

3.      As Office Manager, the Relator personally delivered pay stubs for the "admission bonuses" that the clinical staff received for admitting new patients.

4.      At this time, the clinical staff received an admission bonus whenever they recruited more than ten new patients in a month.

5.      During this time, the admission bonus was calculated on a per patient basis, so that the clinical staff received approximately $75 for each patient recruited once they recruited more than ten patients in a month.

6.      In November 2006, the Relator was promoted to acting Office Administrator.

7.      At the time of the promotion, Tammy McDonald was pregnant and expected to take maternity leave upon the birth of her child.

8.      In or around December 2006, Reliant received a subpoena from the Office of the Inspector General ("OIG") requesting, among other things, copies of all patient records, physician orders, admission documents, and clinical notes.

9.      Tammy McDonald, Tony Chase (shareholder of both Consolo and Reliant), Angie Albright (Reliant's then clinical director), and the Relator worked to pull and copy the subpoenaed documents.

10.     Tony Chase printed the surveyor reports of the clinical notes for each patient.  These reports were placed in expandable files with the patient names and provided to the OIG.

11.     Tammy McDonald personally reviewed Reliant's documents and then pulled the documents she wanted copied.

12.     She gave these documents to either Angie Albright or the Relator, who then copied them and reassembled the file.

13.     During the review process, several unsigned physician orders were discovered.

14.     Reliant previously used these unsigned orders to justify a patient's participation in the hospice care program and receive payments for hospice services provided from both Medicare and Medicaid.

15.     On at least one occasion after locating an unsigned Hospice Certification and Plan of Care, Tammy McDonald told the Relator "if you don't want to see this, turn your head."

16.     Tammy McDonald then forged the physician's signature on the Certification and Plan of Care and included it in the documents produced in response to the OIG subpoena.  A true and accurate copy of the Hospice Certification and Plan of Care is available.  *See* Bates Nos. 00380-00381 in counsel's possession.

17.     Relator also has in her possession other forgeries committed by Tammy McDonald.  Bates Nos. 00377, 00382-00384, 00391, 00392, 000393, 00394, 00395, 00396, 00402 (examples of true signature 00388).

18.     The Relator assisted in the copying of the requested documents, including those that contained forged physician signatures.

19.     These documents were then submitted to the OIG in response to the subpoena.

20.     Shortly after submitting the forged documents in response to the OIG subpoena, Tammy McDonald took maternity leave.

21.     As a result, Reliant needed an administrator to oversee its business activities and in January 2007, the Relator was promoted to Office Administrator on a permanent basis.

22.     As Office Administrator, the Relator's job duties were expanded to include oversight of the entire day-to-day running of Reliant.

23.    During this period, the Relator would receive phone calls from David McDonald at Palmetto Medical Equipment inquiring as to whether Reliant had received "face sheets" for prospective new patients that Palmetto recruited for Reliant.

24.    David McDonald instructed the Relator never to tell the patient or the patient's family where the referral came from.  The Relator was also instructed to label these patients as "community referral" instead of  "physician referral."

25.    The Relator received numerous phone calls from patients and patient family members asking how Reliant received their name and wondering why they were being contacted by a hospice center.

26.    The Relator told the patients that the clinical director would call them back.

27.    As a result of recruiting these patients, Palmetto received a contract to be the exclusive provider of medical equipment to Reliant.

28.    As Reliant recruited its patients through this illegal scheme with Palmetto, it engaged in a pattern of admitting patients that did not qualify for hospice care under either the Medicare or Medicaid programs.

29.    During this period, Reliant routinely disciplined or fired any medical providers who discharged patients.

30.    Reliant maintained a group of physicians to act as "Medical Director" for the hospice program.

31.    None of these physicians were employees of Reliant, instead Reliant, in violation of federal regulations, treated each of the physicians as independent contractors.

32.    The Relator personally distributed to the physicians their respective 1099 forms labeling them as independent contractors.

33.    At least one of the medical directors was dismissed as a medical director for discharging patients who did not qualify for hospice care.

34.    Angie Albright, Reliant's Clinical Director, resigned in June 2007 after being disciplined for discharging patients that did not qualify for hospice care.

35.    In January 2008, Medicare submitted an audit request to Reliant for Patient A.

36.    The Relator received the audit request and provided it to Heidi Davis, Reliant's medical records custodian.

37.    The Relator also informed Tammy McDonald of the audit request.

38.    Tammy McDonald pulled Patient A's file and took it home with her.

39.    Between January 15, 2008 and January 30, 2008, Tammy McDonald changed the clinical indicator and diagnosis codes in Patient 1's records and updated four nursing notes.  Bates No. 00186

40.    On January 29, 2008, Tammy McDonald altered Patient A's medical note number 1356 to change the clinical indicator and diagnosis but dated the update as May 1, 2007 in the actual note.  Compare Bates No.00186 and 00213.

41.    Reliant accepted Patient A into the hospice program under a diagnosis of end stage cardiac disease.

42.    Reliant submitted Patient A as a Medicare patient.

43.    However, the facts did not support a diagnosis of end stage cardiac disease.

44.     As a result, Tammy McDonald, without physician approval, changed the diagnosis to end-stage pulmonary disease and then submitted the altered records to Medicare in response to the audit request.

45.     In July 2007, Relator received a bill from Palmetto Richland ER for treatment received by Patient B, a Reliant patient.

46.     On April 10, 2007, Patient B went to Palmetto Richland ER for treatment of heart disease.

47.     Palmetto Richland submitted the bill to Reliant since the treatment was for complications of Patient B's hospice diagnosis.

48.     On August 14, 2007, Tammy McDonald wrote a letter to Palmetto Richland explaining that Reliant was not responsible for the bill because Patient B did not seek prior approval from Reliant for the ER treatment.  Bates No. 00184

49.     The letter refers to a patient note (Bates No. 00183) dated April 10, 2007, note number 10177, but the note was not actually created until August 7, 2008 (bates no. 00181).

50.     Ms. McDonald created this note to justify non-payment of medical services that should have been covered under Patient B's hospice treatment plan.

51.     In the summer of 2008, the Relator also discovered that Tammy McDonald and other Reliant employees altered the notes of Reliant Patients C, D, E, F, G, H, I, and J without authorization from the patients' health care provider.

52.     On September 8, 2008, Reliant's Clinical Director, at the direction of Tammy McDonald, deleted nurse note #31858 from Patient C's medical charts.

53.     On June 29, 2007, Tammy McDonald altered nurse notes #4842 and #4769 in Patient 4's medical charts without receiving approval from Patient D's health care provider.  Bates No. 00227 and Bates No. 00232.

54.     Tammy McDonald altered at least seven different nursing notes in Patient 8's medical charts without receiving prior approval from Patient I's health care provider.

55.     On July 11, 2007, Tammy McDonald altered Patient I's nursing note #4712 dated June 18, 2007; nursing note #5089 dated July 3, 2007; nursing note #4983 dated July 2, 2007; nursing note #4942 dated June 29, 2007; nursing note #4859 dated June 26, 2007; nursing note #4858 dated June 20, 2007; and nursing note #4941 dated June 25, 2007.  She altered each of these notes again on July 17, 2007.  Bates No. 00318, Bates No. 00336, Bates No. 00342

56.     On July 11, 2007, Tammy McDonald altered Patient E's nursing note #4866 dated June 26, 2006; nursing note # 5008 dated July 3, 2007, nursing note #5150 dated July 10, 2007; and nursing note #4732 dated June 19, 2007.  These alterations were made without approval from Patient E's health care provider.  Bates No. 00240; Bates No. 00245; Bates No. 00251; Bates No. 00257.

57.     On August 7, 2007, Tammy McDonald altered Patient F's nursing note #10174 dated July 12, 2007.  This alteration was made without approval from Patient F's health care providers. Bates No. 00264

58.     On July 17, 2007, Tammy McDonald altered Patient G's nursing note #4723 dated June 18, 2007; nursing note #4869 dated June 26, 2007; nursing note #4970 dated July 2, 2007; nursing note #5157 dated July 10, 2007; nursing note #5239 dated

July 12, 2007; and nursing note #5241 dated July 12, 2007.  These alterations were made without approval from Patient G's health care providers.

59.    Reliant used each of the altered records to justify the respective patients' continued participation in the hospice program and receive payments for hospice services under the Medicare and/or Medicaid programs.

This the  7<u>th</u> day of November, 2008

 <u>/s/Peter D. Protopapas</u>
Peter D. Protopapas, Federal Bar # 7700
W. Jonathan Harling, Federal Bar # 9291
Lewis & Babcock, L.L.P.
1513 Hampton Street
Columbia, SC 29201
803-771-8000
pdp@lewisbabcock.com
wjh@lewisbabcock.com


Alexandre N. MacClenahan
Federal Bar # 9593
The MacClenahan Law Firm, LLC
819 E. North Street
Greenville, SC 29601
864-382-3340
alex@macclenahanlaw.com