**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| *ex rel.* ALISHA KNIGHT, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:08-3724-CMC |
| ) | |
| v. ) | OPINION AND ORDER |
| ) | GRANTING IN PART AND |
| RELIANT HOSPICE, INC. and ) | DENYING IN PART MOTION TO |
| RELIANT MEDICAL PRODUCTS, INC., ) | AMEND COMPLAINT |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on motion of Alisha Knight ("Relator") to amend the complaint. Through this motion, Relator seeks to add five new parties and one cause of action to pierce the corporate veil. In addition, she seeks to substantially expand the allegations in support of her current two causes of action based on activities occurring well after the original complaint was filed. The motion is opposed by Defendants.[1] For the reasons set forth below, the motion is granted to the extent it seeks to add Tammy and David McDonald as Defendants and to assert a veil-piercing claim against those new Defendants. The motion is denied in all other respects.

**STANDARD**

Rule 15 of the Federal Rules of Civil Procedure provides that, with certain exceptions not applicable here, a party should be allowed to "amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave should, however, "be freely given when justice so requires." *Id.* Applying this rule, the United States Supreme Court has held:

---

[1] The Government declined intervention in this matter through a notice filed October 15, 2010, and has taken no active role in briefing the present motion. Relator does, however, represent that the Government consented to the motion Dkt. No. 58.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis,* 371 U.S. 178, 182 (1962). *See also Ward Elecs. v. First Commercial Bank,* 819 F.2d 496, 497 (4th Cir. 1987) (holding that "a change in the theory of recovery and one prior amendment of the complaint [were] not sufficient to justify denial of leave to amend under the principles of *Foman*" absent some resulting prejudice to the opposing party); *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir. 1980).

## BACKGROUND

Relator initiated the present action on November 7, 2008, asserting claims under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et. seq.* Specifically, Relator alleged that Defendants were engaged in fraud on the federal Medicaid and Medicare programs. Dkt. No. 1 ¶¶ 21-28.[2] The matter was, therefore, automatically sealed for sixty days to allow the Government to conduct an investigation and decide whether to intervene in the action. 31 U.S.C. § 3730(b)(2).

The Government sought and was granted multiple extensions of time to investigate the matter and determine whether to intervene. Dkt. Nos. 7, 14, 16, 19. The sealing period was

---

[2] There were originally three Defendants, the two present Defendants plus Consolo Services Group, LLC. ("Consolo"). Dkt. No. 1. Consolo was voluntarily dismissed on November 23, 2010. Dkt. No. 47.

2

extended each time, even though several of the motions sought and received partial lifting of the seal. For example, in its first motion for extension of the seal period, filed in January 2009, the Government sought and was granted a partial lifting of the seal to allow South Carolina Medicaid Fraud investigators and prosecutors to review the matter. Dkt. No. 7 (requesting a ten-month extension of sealing period, through November 17, 2009, and indicating Relator's consent to the motion). Two months before the first extension expired, the Government moved to partially lift the seal to allow discussions with Defendants and their attorneys relating to the matter. Dkt. No. 11 (filed September 18, 2009, and indicating Relator's consent to the motion). Nearing expiration of the first extension, the Government sought an additional ninety-day extension (through February 15, 2009), and sought further partial lifting of the seal to allow discussion with another relator who had filed a similar action and with additional Defendants named in that action. Dkt. No. 14 (filed November 6, 2009). Relator and Defendants consented to this motion.

In February 2009, the Government sought and was granted another ninety-day extension, through May 17, 2009, based on ongoing settlement negotiations. Dkt. Nos. 16, 17. All parties consented to this motion. Dkt. No. 16 at 1. The Government sought an additional thirty-day extension by motion filed May 17, 2010. Dkt No. 19. This motion, which was filed with Defendants' consent, indicated that a settlement had been reached in principle between the parties with the involvement of Tammy McDonald, who is one of the owners of Reliant Hospice and whose personal actions figure significantly in the allegations of fraud. *Id.* at 2.[3] Although the court granted this motion, it indicated that "NO FURTHER EXTENSIONS WILL BE GRANTED." Dkt. No. 20.

---

[3] The motion indicates Relator's counsel was advised of the Government's intent to file this motion but had "not indicated whether he consents or objects" at the time the motion was filed. Dkt. No. 19 at 1. There is no indication Relator opposed this extension.

3

To this point, the matter had been under at least partial seal for a total of nineteen months: the automatic sixty-day period plus an additional seventeen months at the Government's request. All but the last thirty days was with Relator's express consent.

On June 16, 2010, the Government filed a status report and request for conditional dismissal based on the parties' having reached an agreement in principle to settle the matter. Dkt. No. 26. The motion explained that the settlement was conditioned on "final approval from the agency, the execution of written settlement agreements, and the dismissal of Reliant Hospice" and other defendants named in the second-filed, related *qui tam* action. *Id.* at 1 (also noting that a motion to dismiss had been filed in the related action). This motion, which was filed with the consent of all parties, requested and the court granted a sixty-day period in which to obtain the necessary approvals and consummate the settlement. *Id.* at 2; Dkt. No. 27 (order). Thereafter the parties twice sought and received extensions of time to consummate the settlement. Dkt. Nos. 29, 30, 32, 34.[4] The second extension ran the conditional dismissal period through October 15, 2010. Thus, the conditional dismissal period was extended from two to five months.

On October 15, 2010, the Government moved to reopen the case based on a failure of the settlement. Dkt. No. 36. That failure was the result of a "change in financial circumstances" of Defendants and Tammy McDonald. *Id.* at 1. Through the same filing, the Government notified the court that it was declining intervention. *Id.* In reopening the case, the court gave the following instructions:

---

[4] The Government filed the first of these motions, seeking a sixty-day extension and indicating consent of Relator and Defendants. Dkt. No. 29. Defendants filed the second motion, seeking a thirty-day extension and indicating consent of the Government. Defendants stated that Relator had been contacted but had not yet responded. Dkt. No. 32.

4

> Due to the age of this action, the court directs that: (1) service be completed and proofs of service on all Defendants be filed no later than November 9, 2010; and (2) a copy of this order be served with the complaint. The parties are forewarned that NO EXTENSIONS OF TIME TO ANSWER WILL BE ALLOWED and the parties will be expected to conclude discovery and complete briefing on all dispositive motions in time for the matter to proceed to TRIAL IN THE FALL OF 2011.

Dkt. No. 39 (entered October 18, 2010). In imposing these requirements, the court considered the age of the matter, then nearly two years old, and the significant opportunity for development of the factual record provided during the extensive (nineteen-month) investigation period preceding entry of the conditional dismissal order. That period, during which the parties agreed to settle the matter, as well as the five months during which the parties were attempting to consummate the settlement, also provided opportunities for discussions between the parties regarding the relative merits of the case and settlement-related issues.

A scheduling order was entered on November 30, 2010. Dkt. No. 52. That order set February 28, 2011, as the deadline for filing amended pleadings. *Id.* It also set a discovery deadline of June 20, 2011. *Id.* On January 4, 2011, the parties filed a joint Rule 26(f) report setting out, *inter alia*, summaries of their respective positions as to the facts of the case. Dkt. No. 54. Through this document, the parties agreed to the discovery timetable set out in the court's scheduling order. Nothing in this document suggests an intent to expand the scope of the allegations beyond those covered in the original complaint.

Not quite two months later, on February 28, 2011, Relator filed the present motion to amend the complaint. As revealed by her motion, the amendments relate primarily to activities occurring

5

between May 2010 and early 2011. Dkt. No. 57 at 4-5.[5] Relator describes these activities as a continuation of the "fraud set forth in the original complaint through new entities" and as a "new scheme" by Defendant Reliant Hospice, Inc. ("Reliant Hospice"), "to collect monies it was not entitled to." Dkt. No. 57 at 1, 4; *see also id.* at 2 ("The basis for the motion is that a significant amount of continuing fraud and false claims occurred during the two years between the filing of the complaint and when the case was turned back over to the Relator.").

As Relator describes this scheme, it involved the formation of a new entity, Ahava Hospice, by Tammy and David McDonald (collectively "McDonalds") who are two of the four shareholders of Reliant Hospice (one of the current Defendants), and an agreement by the McDonalds to "sell" Reliant Hospice's assets (including patient lists and equipment) to a third entity, Ascension Hospice, for $278,000. Ascension Hospice is owned, in part, by Anthony Williams who Relator alleges "conspired" with the McDonalds by entering this agreement. These "conspirators" also allegedly agreed that Ascension Hospice would hire Tammy McDonald as a consultant with no job responsibilities but a monthly salary of $12,500 and that Reliant Hospice would cease operations in May 2010. According to Relator, this scheme allowed Reliant to avoid its debt to the federal government while allowing the McDonalds to receive funds for Reliant's "assets" (billings on Reliant's patients).

Relator further explains that, in the fall of 2010, "Ascension fell into the same audit problems with the federal government as Reliant [Hospice]," leading to the stoppage of federal payments.

---

[5] The period in which the alleged actions occurred appears to coincide with the period in which the parties were discussing settlement. *See*, *e.g.*, Dkt. No. 16 (Government's February 4, 2010 motion seeking a ninety-day extension of the sealing period based on ongoing settlement negotiations); Dkt. No. 19 (Government's May 17, 2010 motion seeking a further thirty-day extension for the same reason).

Thereafter, employees, patients, and equipment were transferred to Ahava Hospice from Ascension Hospice. Dkt. No. 57 at 5. This transaction included payment of $175,000 to Anthony Williams under a "consulting contract . . . for doing nothing" as well as payment of $36,000 in rent for use of buildings. *Id.*

## DISCUSSION

### I.     Timeliness

Relator's motion is timely in the sense that it is filed within the time allowed by the scheduling order. This "measure" of timeliness must, however, be balanced against the age of the case (well over two years at the time the motion was filed), extensive prior proceedings, and scope of the proposed amendments. Notably, the prior proceedings included extensive investigations (aided by both state and federal investigators), discussions, and even a failed settlement all of which occurred prior to entry of the scheduling order (which could not be entered prior to the unsealing of the matter). The scheduling order made clear that the court intended to try this matter in the fall of 2011, roughly three years after the action was filed. Moreover, in their Rule 26(f) report, the parties agreed to this schedule.

Under these circumstances, the court would find no timeliness bar if the proposed amended complaint merely clarified theories of liability and corrected factual allegations to fit the facts uncovered during earlier investigations. This is true even if the clarifications and corrections resulted in some minor expansion of the scope of the case.

Relator's proposed amendments cannot, however, be characterized as clarifications or corrections. Neither is the resulting expansion of the scope of the case minor. Instead, Relator seeks

7

to add allegations relating to an alleged fraudulent scheme (or series of schemes) and related conspiracy which, even if linked in some linear fashion to the fraud originally pleaded, would require entirely distinct proof relating to five new Defendants and a different period of time. The legal theory or theories underlying the proposed amendments is also distinguishable in that the focus of the new allegations is on the nature of various transfers between individuals and entities (akin to claims for fraudulent conveyances and piercing of the corporate veil) rather than on the sort of fraud allegations found in the original complaint.

The addition of new parties and claims, therefore, raises competing fairness concerns as relates to the scheduling order. This is because the originally named parties have a significant interest in moving the initial claims to conclusion under the schedule set after the Government declined intervention. As noted above, this schedule envisions trial in the fall of 2011 and takes into consideration the substantial investigations completed prior to entry of the scheduling order.

In contrast, the proposed new parties (at least all but the McDonalds) have not had the benefit of prior investigations or discussions. Moreover, the prior investigations and discussions are likely to be of limited use as they would only have touched peripherally, if at all, on the new allegations most of which relate to a period during which the parties were engaged in settlement negotiations and attempts to consummate the settlement. Thus, holding the "new" parties to the present schedule would likely be unreasonable particularly as to new allegations of fraud and conspiracy. Indeed, the current schedule is probably insufficient even for existing parties to adequately develop the record as to the new allegations, particularly those related to the expanded claims for fraud and conspiracy. In short, while the motion is technically "timely" under the

8

scheduling order, it is untimely in the larger context of this case given the age of this matter and the extensive nature of the proposed amendments.

**II.    Prejudice**

As discussed above, if allowed in full, the proposed amendments would add new allegations and parties vastly expanding what is at issue in this action. The first risk of prejudice, therefore, flows from the competing goals of moving this case to completion in a timely manner, and allowing a fair opportunity for discovery as to the new parties and claims.[6] At least some of the added allegations, even if bearing some relationship to the original claim, are also so clearly distinct from the original claims that they will vastly expand the complexities of proof and risk confusion of the jury. Each of these considerations leads the court to conclude that granting the motion to amend in full would be unduly prejudicial both to the original Defendants and those to be added.

There is no countervailing legal prejudice as to the added allegations of fraud and conspiracy. If the allegations which Relator now seeks to add amount to a fraud on (or conspiracy against) the Government, either Relator (if allowed by law), another appropriate relator, or the

---

[6] If Relator's motion is granted, the amended complaint likely will not be served on all parties until mid April 2011 at the earliest. That will allow only two months between service and the present discovery deadline of June 20, 2011. This would not be enough time for the parties (new or old) to conduct meaningful discovery as to any substantially expanded claims of fraud and conspiracy. Thus, if the court granted the amendment as proposed, fairness would require a substantial extension of discovery.

Amendment to add a veil-piercing claim, by contrast, would not require a substantial extension of discovery as the McDonalds have been aware of the litigation from the outset and certainly have the greater knowledge of whatever information may be relevant to a veil piercing claim. While Plaintiff may be somewhat disadvantaged by a limited period for discovery relating to this claim, that is the result of her decision to add the veil-piercing claim to this action rather than pursuing it in a post-judgment proceeding. *See* Dkt. No. 61 at 5 (arguing, on reply, that amendment of the complaint would not require modification of the trial date).

Government itself may pursue them in a separate action. Thus, denial of the motion to amend as presently proposed does not deny relief to the Government or any person who might properly bring such a claim as Realtor under the False Claims Act.

Alternatively, the new factual allegations may support pursuit of recovery from the "new" Defendants for any judgment which Relator might receive if successful on her original claims, either under a veil-piercing or fraudulent conveyance theory. Recovery under such theories may either be pursued in the original action or in post-judgment proceedings. *See generally Drury Devel. Corp. v. Found. Ins. Co.*, 668 S.E.2d 798 (S.C. 2008) (holding that veil-piercing claim *may* be brought in same case as corporate liability claim, although "the corporate veil is often pierced post-judgment"); *Beckroge v. South Carolina Power Co.*, 15 S.E.2d 124 (S.C. 1941) (addressing post-judgment action for fraudulent conveyance by corporation, allegedly for the purpose of avoiding payment of judgments, and holding that the transferred property could be "subjected to the payment of the judgments procured against the [transferor corporation] in the actions pending at the time of the transfer of the properties"); *Commercial Credit Loans, Inc., v. Riddle*, 512 S.E.2d 123 (S.C. App. 1999) (addressing tolling rules as applied to post-judgment action for fraudulent conveyance).

Of these two potential categories of claim, Relator expressly seeks only to add a veil-piercing claim against the McDonalds. While her "fraud" allegations arguably support a claim for fraudulent conveyance which would involve the interests of the other "new" Defendants, no such claim as been proposed. Instead, the relevant allegations appear solely in support of the amended claims for civil conspiracy and violation of the False Claims Act. *See* Dkt. No. 57-1 at ¶¶ 100-117.

Although Relator does not request an alternative grant of a more limited amendment, the court has considered whether Relator should be allowed to amend to add the veil-piercing claim

10

against Tammy and David McDonald, two of the owners of Reliant Hospice. Given their ownership of one or both of the present Defendants,[7] these individuals have been aware of this action from the outset and may be presumed to have directed the defense and to have participated in the investigations and settlement discussions. They are, therefore, also chargeable with the delays in these proceedings, particularly those which resulted from the extended settlement negotiations and period allowed for consummation of the same (through the conditional dismissal order and extensions of that order). Thus, requiring the McDonalds to defend claims asserted against them personally under the present schedule is not unfair. Addition of the veil-piercing claim will not, in any event, require the same degree of expansion of discovery as would allowance of the expanded allegations of fraud and conspiracy.[8] The court, therefore, will allow amendment to add a veil-piercing claim and to add Tammy and David McDonald as Defendants relative to that claim.[9]

---

[7] David McDonald is also the owner of Defendant Reliant Medical Products, Inc.

[8] Discovery as to the veil-piercing claim should focus on how the McDonalds handled the assets of the two corporate Defendants. This may include consideration of activities predating Reliant Hospice's sale of assets to Ascension Hospice as well as matters relevant to that sale. For example, it may consider what compensation was paid for "purchase" of Reliant's assets, whether that payment was made directly to Reliant or indirectly to one or both of the McDonalds. Plaintiff may, therefore, inquire into payment of any post-sale fees or salaries to the McDonalds and what work was done in exchange. Plaintiff may not, however, inquire into whether Ascension Hospice itself engaged in any fraud on the Government.

[9] The amendment authorized is limited and does not extend to any claim for fraudulent conveyance for several reasons. First, Relator has not expressly sought to add a fraudulent conveyance claim. Instead, she included the new factual allegations under her False Claims Act claim. This placement suggests that the alleged actions caused the Government *new* injuries or losses. A claim for fraudulent conveyance would, in contrast, require proof that Defendants transferred assets to a third party to avoid satisfaction of an anticipated judgment. Necessarily, that judgment would be for some *prior* injury or loss. Third, although some of Relator's new allegations might better fit a claim for fraudulent conveyance, such a claim could be pursued in a post-judgment proceeding. Leaving Relator to that course avoids the substantial complications and delays which would result if a fraudulent conveyance claim was added to this action.

**III.     Futility**

The parties against whom the amended aspects of the fraud and conspiracy claims would be asserted are not before the court. The court does not, therefore, resolve the question of futility. The court does, however, note that Defendants have raised significant concerns with the viability of the added allegations of fraud and civil conspiracy. These concerns are sufficient to persuade the court that it would be required to address non-frivolous motions to dismiss if the motion to amend were granted in full. Briefing and resolution of such motions would, necessarily, delay the progress of this case toward trial.

**IV.     Local Civil Rule 30.04**

In their memorandum in opposition to Relator's motion, Defendants describe an arguably inappropriate question asked at a third-party deposition: whether the Rule 30(b)(6) deponent was having an affair with Tammy McDonald? The memorandum then states: "[n]eedless to say, at that point the deposition was terminated." The memorandum does not reveal who made the decision to terminate the deposition. The court will, however, assume that it is not one of the attorneys now before the court. Even with this assumption, the court concludes that some reminder of the relevant Local Civil Rule requirements is warranted.

Assuming without deciding that the question was entirely inappropriate, the reaction was equally so. As explained in Local Civil Rule 30.04(I): "If an objecting party or deponent demands, after good faith consultation . . . that the deposition be suspended . . . , the assigned judge's office shall be contacted to allow that judge to resolve the matter telephonically[.]" This rule was intended to avoid suspension (much less "termination") of depositions without judicial approval. Counsel also had another less drastic alternative, directing the deponent not to answer. If this alternative was

12

invoked, it would have required the attorney who offered the direction to file a motion under Fed. R. Civ. P. 30(d)(1).  *See* Local Civil Rule 30.04(C) (noting that "[f]ailure to timely file such a motion will constitute waiver of the objection, and the deposition may be reconvened").  This also would have brought the issue to the court's attention for resolution.  *See also* Dkt No. 52 ¶8 (Scheduling Order directive that "No motions relating to discovery shall be filed until counsel have . . . had a telephone conference with Judge Currie in an attempt to resolve the matter informally.").

As the court was not contacted before counsel terminated the deposition as required by Local Civil Rule 30.04(I) and no subsequent motion was filed under Local Civil Rule 30.04(C), the termination of the deposition (and implicit direction not to answer) is subject to sanctions.  *See* Local Civil Rule 30.04(J) ("Violation of this Local Civil Rule shall be deemed a violation of a court order and shall subject the violator to sanctions under Fed. R. Civ. P. 37(b)(2).").  If a motion for sanctions was properly presented and the facts were as suggested above, the court would be inclined to require, as a sanction, that the deposition be reconvened at the expense of the attorney who elected to terminate the deposition.  However, in light of the ruling on the motion to amend, it appears that this witness's testimony would have no further relevance to this action.  The court, therefore, declines to impose any sanction under the circumstances.

**CONCLUSION**

For the reasons set forth above, the court denies Relator's motion to amend the complaint to expand the allegations under the False Claims Act and conspiracy claims. The court will, however, allow amendment to add the veil piercing claim against Tammy and David McDonald. Relator shall file an amended complaint limited as indicated above within seven calendar days of entry of this order and shall serve the same on all added parties within seven calendar days thereafter. The matter shall then proceed to trial under the schedule previously announced.

IT IS SO ORDERED.

                                                     s/ Cameron McGowan Currie
                                                     CAMERON MCGOWAN CURRIE
                                                     UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
April 4, 2011